THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>JAMES ALLEN ANGELO,<br><br>Debtor.<br><br>JAMES ALLEN ANGELO,<br><br>Appellant / Cross-Appellee,<br><br>v.<br><br>TOUCH WORLDWIDE HOLDINGS LIMITED, and TOUCH WORLDWIDE LLC,<br><br>Appellees / Cross-Appellants. | CASE NO. C17-1056-JCC<br><br>ORDER AFFIRMING BANKRUPTCY COURT |

This matter comes before the Court on Appellant / Cross-Appellee James Angelo's Opening Brief, Response Brief, and Reply Brief (Dkt. Nos. 9, 11, 14) and Appellees / Cross-Appellant Touch Worldwide Holdings Limited's and Touch Worldwide LLC's ("Touch") Opening Brief, Response Brief, and Reply Brief (Dkt. Nos. 10, 13, 15). Having considered the briefs and exhibits submitted by the parties, the Court AFFIRMS the decision of the bankruptcy court dismissing Angelo's Chapter 13 bankruptcy petition.

ORDER AFFIRMING BANKRUPTCY COURT
C17-1056-JCC
PAGE - 1

## I. BACKGROUND

Angelo's Chapter 13 bankruptcy petition followed an arbitration proceeding between Touch and Angelo, Touch's former CEO. (Dkt. No. 9 at 8.) Angelo received a merits judgment in that proceeding. (*Id*.) But following the judgment, the arbitrator learned that Angelo violated a protective order entered during the proceeding. (Dkt. No. 13 at 8–9.) Angelo used proprietary information attained during discovery and in violation of the protective order to compete with Touch and acquire a multi-year services contract with Microsoft. (*Id*.) The arbitrator concluded that under controlling law, the misconduct was not a basis to reverse the merits judgment, but warranted sanctions. (Dkt. No. 10-1 at 125.) During a resulting sanctions hearing, Angelo actively concealed evidence of the violations, perjured himself, and manufactured and presented false evidence in an effort to avoid sanctions. (*Id*.)[1] The arbitrator learned of this misconduct and levied sanctions against Angelo including payment of Touch's attorney fees and a five year disgorgement of a percentage of the profits attributable to the business Angelo acquired through his violation of the protective order. (*Id*. at 137–142.)

In the midst of the sanctions proceedings, Angelo filed for Chapter 13 bankruptcy relief. (*Id*. at 6.) Angelo made his initial bankruptcy filing less than a month before a scheduled hearing before the arbitrator. (*Id.* at 310.) The purpose of the hearing was for the arbitrator to rule on a method to estimate the amount of profits subject to disgorgement, to consider the reasonableness of attorney fees and costs awarded to Touch, and to finally determine how much Touch owed Angelo under the merits judgment. (*Id*. at 253–55, 310.) The bankruptcy filing was also days before Angelo was to appear in a deposition in preparation for the arbitration hearing. (*Id*. at 258.) Angelo's bankruptcy filing effectively stayed the arbitration. (Dkt. No. 10-2 at 315.)

Angelo's initial bankruptcy filing was a bare bones petition followed by a full filing approximately two weeks later. (Dkt. No. 10-1 at 6, 14, 63.) Angelo disclosed assets of

---

[1] Angelo does not materially dispute these assertions. (Dkt. No. 9 at 8, 12.)

approximately $2.75 million, liabilities of approximately $1 million, and current monthly income of $23,772. (*Id*. at 14.) Angelo initially scheduled the following liquidated[2] unsecured claims: $13,225 to the arbitrator, $75,000 to his business partner as a debt owed by his company, $75,000 to his spouse as a loan to the marital estate from her separate property, $67,220 to the attorney who rendered services in his arbitration proceeding, and an "unknown" amount to Touch. (*Id*. at 29–31.) He later amended the filing to include $7,000 of credit card debt and to increase the debt to his spouse to $85,163. (Dkt. No. 9-9 at 4.) Angelo's full filing was accompanied by a Chapter 13 plan. But the plan was unconfirmable. (*Id*. at 97.) The bankruptcy court directed Angelo to file an amended plan by a date certain. (*Id*.) Before that date arrived, Touch moved to dismiss Angelo's petition. (*Id*. at 99.)

In its motion to dismiss, Touch asserted that the $484,226 in attorney fees Angelo owed it as a result of the arbitration sanctions was not "unknown," and on this basis his noncontingent liquidated unsecured debts exceeded the statutory cap for a Chapter 13 filing of $394,725.[3] (*Id*. at 110). Therefore, according to Touch, Angelo did not qualify as a Chapter 13 debtor. (*Id*. at 111.) Touch further alleged that even if Angelo did qualify, his bankruptcy filing was in bad faith and should be dismissed for cause because of Angelo's admitted pre-petition conduct, along with allegations that Angelo filed his petition to impede, delay, and forum shop his arbitration dispute, and that Angelo misrepresented facts in his petition. (*Id*. at 106–09.)

Angelo filed an amended bankruptcy plan following Touch's motion to dismiss but before argument was heard on the motion. (*Id*. at 187.) Angelo's amended plan proposed monthly payments of $2,000 against an asserted liquidated value for the bankruptcy estate of $564,807. (*Id*. at 187, 190.) The plan identified no other mechanism to repay the estate, save the $2,000 monthly payments and 50% of the net proceeds from any legal malpractice suit between

---

[2] A debt is "liquidated" if the amount "is readily determinable." *In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999).

[3] *See* 11 U.S.C. § 109(e) (as adjusted April 1, 2016).

Angelo and his arbitration attorney. (*Id*. at 191.)

The bankruptcy court took briefing and heard lengthy oral argument on the motion to dismiss. (Dkt. No. 10-2 at 304.) It requested additional briefing from both parties and documentation from Angelo that the debt he claimed the marital estate owed to his spouse arose from her separate property. (*Id*. at 343–45, 349.) In an oral ruling granting Touch's motion to dismiss, the bankruptcy court found that the attorney fees owing to Touch were not liquidated and, therefore, Angelo qualified as a Chapter 13 debtor because his noncontingent liquidated unsecured debts amounted to less than the statutory cap of $394,725. (Dkt. No. 10-1 at 382). But the court ruled that Angelo's filing was in bad faith and dismissed the matter for cause. (*Id*.) Angelo appeals the bankruptcy court's dismissal. (Dkt. No. 9.) Touch cross-appeals the court's determination that Angelo qualified as a Chapter 13 debtor. (Dkt. No. 10)

## II. DISCUSSION

### A. Standard of Review

This Court may review the bankruptcy court's decision. 9 U.S.C. § 16(a)(1)(A)–(B); 28 U.S.C. § 158(a)(1). The standard of review is "abuse of discretion." *In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999). Whether the bankruptcy court applied the correct legal standard is reviewed *de novo*. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Factual findings are reviewed for clear error. *Id*. Clearly erroneous factual findings are illogical, implausible, or without support in the record. *Id.*

### B. Dismissal for Cause

Upon motion of an interested party, a petitioner's Chapter 13 bankruptcy case can be dismissed for cause. 11 U.S.C. § 1307(c). A "bad faith" filing is sufficient to dismiss for cause. *Leavitt*, 171 F.3d at 1224. Bad faith is determined based upon the "totality of the circumstances." *In re Tucker*, 989 F.2d 328, 330 (9th Cir. 1993). While not an exhaustive list, relevant factors include (1) "whether the debtor misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an

inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present." *Leavitt*, 171 F.3d at 1224 (internal citations and quotation marks omitted).

The bankruptcy court in this case weighed the *Leavitt* factors described above, as well as other factors, to conclude that Angelo's Chapter 13 petition was a bad-faith filing. (*See* Dkt No. 10-1 at 399–408). At issue is whether the bankruptcy court erred in finding sufficient facts to support this holding, based on a totality of the circumstances. This Court finds no clear error. Sufficient facts exist to support a bad-faith determination based on a totality of the circumstances.

1. *Leavitt* Factors

First, Angelo misrepresented facts in this case. He claimed in his bankruptcy filing that the source of the loan from his spouse to the marital estate was her separate property—Microsoft stock she acquired prior to their marriage through stock options exercised in a retirement account. (Dkt. No. 10-2 at 334.) In response, the court asked for a declaration "providing evidence regarding [Angelo's] wife's separate claim and her loan" to prove the "Microsoft stock was her property prior to the marriage" and "anything else that shows that this is a legitimate loan from Mrs. Angelo's separate property to Mr. Angelo or to the Angelo community." (*Id*. at 343–44.) In response, Angelo produced a declaration, but no evidence demonstrating when the stock options were exercised. (*Id*. at 377–78.) Further, Angelo's declaration could be read to imply that the exercises occurred *after* the marriage. (*Id*. at 378.) When the bankruptcy court pointed this out, Angelo conceded that "there is nothing in the declaration that says when the particular stock that was liquidated was acquired." (*Id*.)

Second, it appears that Angelo made his Chapter 13 filing only to defeat state court litigation. A review of his schedule of liquidated unsecured claims makes clear that the bankruptcy was, in fact, a two-party dispute. *See In re St. Paul Self Storage Ltd. Partn.*, 185 B.R. 580, 583 (B.A.P. 9th Cir. 1995) (a two-party dispute "strongly suggests Debtor's intent to use the

bankruptcy code as a means to escape to a forum which it perceive[s] to be more friendly"). Once the purported loan from his spouse is stripped away, what is left, other than the debt to Touch, is $7,000 in credit card debt, $13,225 owing to the arbitrator, $75,000 owed by his wholly-owned *company* to a business partner,[4] and $67,220 owing to an attorney whom Angelo admits that he intends to sue for malpractice rather than pay. (Dkt. No. 9-9 at 2–4); (*see* Dkt. No. 10-2 at 373) (Angelo admitting that he intends to object to the claim brought by his former attorney in the bankruptcy proceeding). Neither the credit cards nor the arbitrator filed a proof of claim in this matter (Dkt. No. 10-1 at 389), and the remaining claims do not warrant Chapter 13 relief.

In addition, Angelo made his Chapter 13 filing on the eve of a deposition and within weeks of an arbitration hearing. As the bankruptcy court noted, the timing makes his Chapter 13 filing appear more like a "litigation tactic and forum shopping" than a good-faith effort. (Dkt. No. 10-1 at 401.) *See In re St. Paul*, 185 B.R. at 583 (debtor showed bad faith in filing for bankruptcy one day prior to a hearing on a creditor's discovery motion in state court litigation). Even Angelo admits that he filed for Chapter 13 protection "because of the arbitration." (Dkt. No. 9 at 10.) Given these circumstances, it appears that Angelo only intended to defeat state court litigation through his Chapter 13 filing.

Third, Angelo's pre-petition behavior was egregious. He admits that he violated a protective order, committed perjury, and fabricated evidence in an attempt to conceal his violation. (Dkt. No. 10-1 at 125–28.) It was this conduct that led to the sanctions from which he now seeks bankruptcy protection. (*Id.* at 125). Angelo argues that pre-petition conduct is not

---

[4] Notably, Angelo scheduled company debts but not company assets (Dkt. No. 10-1 at 21). Those assets included $200,000 in cash at the time the arbitrator imposed sanctions. (Dkt. No. 10-1 at 152.) Angelo argues this was proper because "the liquidation value of a membership interest is not equal to the amount of money a company has in the bank at any particular time." (Dkt. No. 14 at 11.) Perhaps, but the Court a) is highly skeptical that the liquidation value of a company holding $200,000 in cash is zero and b) does not believe that a good faith petitioner would freely estimate his wholly-owned company's liabilities but not its assets.

relevant and even if it is, the bankruptcy court relied too heavily on it in this instance. (Dkt. No. 9 at 30.) This Court disagrees. Pre-petition behavior is relevant in assessing whether a petitioner engaged in egregious behavior. *See, e.g.*, *Tucker*, 989 F.2d at 330; *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982); *In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2000), *aff'd,* 336 F.3d 864 (9th Cir. 2003). Furthermore, the bankruptcy court did not rely too heavily on this factor. Indeed, a factor can be dispositive. *In re Mahmood*, 2:15-BK-25281-DS, slip op. at *4 (B.A.P. 9th Cir. Mar. 17, 2017).

### 2. Additional Considerations

The Court may look to factors outside of those articulated in *Leavitt* to assess the totality of the circumstances. *Id*. Here, a number of additional considerations further support a bad-faith determination.

First, Angelo did not disclose the amount of the liability associated with the attorney fees owing Touch, despite the fact that, in this Court's view, the amount was readily ascertainable and, therefore, liquidated.[5] *See In re Wenberg*, 94 B.R. 631, 635 (B.A.P. 9th Cir. 1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990) (attorney fees are readily ascertainable even if subject to a hearing to determine reasonableness). The dubious scheduling of his debts suggests a bad-faith filing.

Second, in the two years prior to Angelo's bankruptcy filing, he earned between $313,000 and $320,000 annually. (Dkt. No. 10-1 at 41.) Further, Angelo estimated his net worth at the time of his Chapter 13 filing at over $1.7 million, inclusive of an estimated $615,000 merits award from Touch. (*Id*. at 14, 23.) It appears that Angelo has "substantial ability to earn money and pay his debts." (*Id*. at 400.) Yet he proposed $24,000 in annual payments in

---

[5] The bankruptcy court found that the amount was not readily determinable. This Court disagrees. All that remained to finally determine the amount of the fees owing was a reasonableness hearing. (Dkt. No. 10-2 at 6.) This is not a sufficient basis to conclude the amount was unliquidated. *In re Wenberg*, 94 B.R. 631, 635 (B.A.P. 9th Cir. 1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990); *In re Mortensen*, C15-40137, slip op. at *4 (Bankr. W.D. Wash. May 1, 2015). That being said, the Court need not reach the issue of whether Angelo was, in fact, a qualified Chapter 13 debtor, and chooses not to do so here.

satisfaction of a bankruptcy estate that he estimated to be $564,807. (*Id*. at 190.) Given Angelo's assets and income, his proposed monthly payment plan does not represent a good-faith effort to repay his bankruptcy estate.

Third, debts arising from Angelo's willful and malicious behavior are not dischargeable in a Chapter 7 bankruptcy case, but are in a Chapter 13 case. 11 U.S.C. § 523(a)(6). Angelo's apparent manipulation of his schedules to ensure qualification under Chapter 13, given the unique benefits of this treatment over Chapter 7 treatment, further indicates bad faith.

The bankruptcy court did not commit clear error in concluding that Angelo's Chapter 13 filing was made in bad faith, based on the totality of circumstances. The Court DENIES Angelo's appeal of the bankruptcy court's dismissal (Dkt. No. 9). The Court DENIES Touch's cross-appeal (Dkt. No. 10) as moot. The Court declines to reach the issue of whether Angelo was a qualified Chapter 13 debtor.

## III. CONCLUSION

For the foregoing reasons, the bankruptcy court's order is AFFIRMED. The Clerk is DIRECTED to close the case.

DATED this 14th day of November 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE